# DANIEL E. SICKLES AND OTHERS, RESPONDENTS, *v.* BENJAMIN RICHARDSON, APPELLANT, IMPLEADED, ETC.

*Bonds of a corporation cannot be levied upon until they have been delivered — a pledgee may waive his lien and sell the property under an execution — Right of action in bondholder — Evidence — what statements of a party are admissible as part of the res gestæ.*

The plaintiffs, claiming to be the holders of bonds issued by the Chicago, Saginaw and Canada Railroad, brought this action, in behalf of themselves and all others similarly situated, against the railroad company, the trustees under a mortgage issued by it to secure the payment of the aforesaid and other bonds, and one Richardson, to restrain the latter from transferring a number of such other bonds purporting to be secured by said mortgage held and claimed to be owned by him, and to procure their cancellation. Upon the trial it appeared that 600 of the bonds were pledged to Richardson to secure large sums of money lent and advanced by him to the company. Subsequently, upon a settlement with the company it gave to him its notes for the amount in which it was then indebted to him, viz., the sum of $185,000, which sum included a large amount of the indebtedness for which he held the bonds and also a subsequent accruing indebtedness for which he held no collateral. Thereafter Richardson, after offering to surrender the bonds and demanding payment of the notes, brought an action on the latter in which he subsequently recovered a judgment. Under an attachment issued in this action the sheriff levied upon 2,974 bonds of the company, then in the office of the company, but which had never been issued by it. Thereafter these bonds were sold by the deputy sheriff under an execution issued upon the judgment, and purchased by Richardson.

*Held*, that the bonds having never been delivered were not the subject of attachment, nor of sale upon execution, and that Richardson acquired no title thereto by his purchase.

The 600 bonds were sold at the same time by the deputy sheriff and purchased by Richardson. Upon the trial it was claimed by the plaintiffs that they were sold by virtue of the attachment and execution, and by Richardson that they were sold by virtue of the pledge in pursuance of due notice of the time and place of sale given by him to the company.

*Held*, that even if the bonds were sold under the execution Richardson acquired a good title thereto, subject, perhaps, to the right of the company to redeem on payment of the amount for which they were pledged, as he was entitled to waive the lien upon them created by the pledge and have them levied upon and sold as property of the judgment debtor.

Upon the trial Richardson offered to prove the agreement made by him as to the selling of the 600 bonds, with the deputy sheriff, who was then dead.

*Held*, that the agreement was admissible as a part of the *res gestæ*, as tending to

characterize the transaction of sale, and that the court erred in excluding the evidence.

*Quære,* as to whether such an action as the present one could be maintained by the plaintiffs.

APPEAL from the judgment in favor of the plaintiffs, entered upon a trial had at Special Term.

*Dexter A. Hawkins,* for the appellant.

*Elihu Root,* for the respondents.

DAVIS, P. J.:

This action was brought by the respondents, on behalf of themselves "and all other persons similarly situated and having a common interest with them," as holders of bonds of the Chicago, Saginaw and Canada Railroad Company against the appellant Richardson and the said railroad company and Ashbel Green and William Bond, who are trustees under a mortgage given by the company of its road and other property, to secure all the bonds issued under such mortgage. The object of the action is to restrain the appellant Richardson from transferring a large number of the bonds, held and claimed to be owned by him, and to compel their cancellation, and to restrain the trustees under the mortgage from recognizing such bonds as valid obligations of the company. The railroad company appeared in the action, but made default by not answering. The trustees appeared and answered, admitting some of the allegations of the complaint and putting in issue some others, and, in substance, asserting their willingness in all things to fulfill their duties and obligations as trustees under the trust deed or mortgage, and alleging as a reason for not having taking pro ceedings against the defendant Richardson in this State, that they have commenced a suit in the Circuit Court of the United States, in the district of Michigan, for the foreclosure of the mortgage or trust deed, and that in such suit, as they are advised and believe, the various questions which have been raised in this case will be presented for adjudication, and the rights of the several parties determined. The defendant Richardson answered separately, putting in issue most of the material allegations of the complaint, and

asserting a title to 2,974 of the bonds in his possession, acquired through a sale by the sheriff of the city and county of New York, under an attachment and execution and upon a suit brought and judgment recovered by him in the Court of Common Pleas of the city and county of New York, against the said railroad company; and also alleging title to 600 of the bonds held by him by reason of a pledge thereof made to him by the railroad company as security for a large amount due to him, and a sale under the pledge, after a notice, etc., at which sale he became the purchaser of the said bonds. The appellant also set up that before the commencement of this action the said trustees, Green and Bond, under and in accordance with the terms and conditions of the said mortgage, in pursuance of the powers therein conferred upon them, commenced a suit for the foreclosure of the said mortgage under which said bonds were issued, in the Circuit Court of the United States, in the district of Michigan, in which district and within the jurisdiction of which court said railroad is located; and that the said court has obtained jurisdiction of the whole subject-matter, to adjudicate and determine all rights and equities between all the bondholders under the said mortgage, and especially all rights and equities relating to said 2,974 bonds and said 600 bonds now held by the appellant.

The trial resulted in a judgment in favor of the plaintiffs, and against all the defendants, declaring all of the bonds held by the appellant Richardson to be invalid and void as obligations of the company, and not entitled to participate in any of the benefits secured, and intended to be secured, by the mortgage, and perpetually restraining and enjoining the trustees under the mortgage from recognizing, acting upon or obeying the directions of any person or persons as the holder or holders, or by virtue of the possession or claim to ownership of the said bonds, or any of them, and perpetually restraining and enjoining the appellant Richardson from selling, pledging, disposing of or in any way using the said bonds, and ordering them to be canceled and appointing a receiver to take into his possession and cancel the said bonds in the mode directed by the judgment, and after such cancellation to return the same to the said appellant Richardson and adjudging costs and allowances against the appellant Richardson.

The plaintiffs allege no title upon which to bring and maintain

this action, except that they are holders for value and owners of bonds to the amount of over $250,000, which are part and parcel of the 5,500 bonds executed, certified and secured by the said mortgage of the company; and upon this title they claim to attack the validity of the bonds held and claimed by the appellant Richardson in this action, and to have the same annulled and canceled and to prevent the trustees and the company from recognizing them as valid obligations, and the appellant from asserting them as such in any proceeding under the said mortgage; and as a reason for themselves proceeding by action, they assert that the trustees have declined to take proceedings against the appellant, and that the company, upon application to its president, has declined to take any action to obtain the relief demanded, or any action or proceeding whatever in the premises. There is no averment or proof that the board of directors of the railroad company have been requested to take any proceedings, or have refused so to do, but it is, in substance, alleged that said board of directors are, and have been, under the control of the said appellant and parties in his interest.

It was proved upon the trial that the alleged action to foreclose the mortgage and determine the rights of all parties and claimants therein had been commenced in the Circuit Court of the United States for the district of Michigan by the said trustees before the commencement of this action, and was still pending and undetermined, and that a part of the remedy prayed for in that suit was to obtain an account of the bonds secured by said mortgage, with the amount due on said bonds of principal and interest, and the names of the lawful holders thereof.

Upon this state of facts it is not easy to see upon what principle the plaintiffs as mere naked bondholders, and in that right creditors of the railroad company, can attack the right and title of other bondholders claiming also to be creditors of said company and have the same adjudicated as an independent cause of action in their own behalf against the railroad company, the trustees under the mortgage deed, and the creditors. Such an action under the circumstances, and while the trustees are proceeding in a court of competent jurisdiction, is probably wholly without precedent. But it is not necessary to determine the question of the right of plaintiffs to bring this action, and the effect of the suit pending in the Circuit

Court of Michigan upon that right, because upon other grounds, we think the judgment must be reversed and a new trial granted. Upon which new trial those questions can be more fully and carefully presented and considered, and perhaps upon some additional facts.

The complaint alleges that the plaintiffs are owners and holders for value of upwards of $250,000 of the bonds issued by the company under this mortgage. This allegation was put distinctly in issue by the answer of the appellant. The court below has found that they are the owners of $150,000 of those bonds; and to this finding an exception was duly taken on behalf of the appellant.

It is now insisted that no evidence was given upon the trial to sustain the finding; and this seems to have been the fact. A careful reading of the case has failed to disclose any such evidence, and the points of the learned counsel for the respondent fail to point out any. The question was not raised by the appellant or either of the defendants at the close of the plaintiffs' case, or at any other time during the trial. The fact of the plaintiffs' ownership ought, perhaps, to be taken to have been assumed by all parties. The case shows that the appellant's counsel requested the court to find that the plaintiffs were "holders and owners of 160 of the bonds, but not judgment creditors or stockholders," thus virtually conceding the ownership to that extent. The court refused so to find, and the appellant excepted to the refusal. The precise amount of the bonds owned was not a material fact so far as any right on their part to have the bonds held by the appellant declared canceled is concerned. Under such circumstances it is not necessary to consider whether the failure of proof is sufficient ground for reversing the judgment. The proof will doubtless be readily supplied upon a new trial.

The appellant Richardson, as the case shows, lent and advanced large sums of money to the railroad company, for which 600 of its bonds were pledged and delivered to him as collateral security. Subsequently, upon an adjustment and settlement of accounts between himself and the company, made by the board of directors, it was found that the company was indebted to him in the sum of about $185,000, which sum included a large amount of the indebtedness for which he held the 600 bonds as collateral, and a subsequently accruing indebtedness for which he held no collateral, making the aggregate above stated. Three notes payable on demand were

given to him by the railroad company covering the full amount of the indebtedness.

At that time he still had in his possession, held as collateral to the indebtedness first above mentioned, the 600 bonds previously delivered. His right to them as collateral security was clearly recognized by the resolution of the board of directors authorizing the giving of the notes. Shortly after the notes were given he presented the notes and the collaterals then in his hands, and demanded payment of the notes, offering to surrender the collaterals upon such payment. Payment was not made, and thereupon he commenced suit in the Common Pleas upon the said three notes to recover the amount thereof against the said company. In that action he subsequently sued out an attachment against the property of the company, and the sheriff attached and took into his possession 2,974 bonds of $1,000 each, belonging to the company and then in the office of the secretary of the company, and gave to the secretary a receipt for the same. These bonds had never been, in fact, issued by the company. The 600 bonds were at that time still in the possession of the appellant. There is no evidence showing that they were, in fact, attached by the sheriff under the writ in his hands, and the appellant testifies that they were never attached.

Upon this state of facts it is clear, upon authority, that the 2,974 bonds which had never been issued were not the subject of attachment, nor of sale upon execution. They had been prepared and made complete in form by due execution for the purpose of borrowing money, but until delivered they had no more validity than the undelivered note of an individual made for the same purpose. It was settled in *Coddington* v. *Gilbert* (17 N. Y., 489) that such bonds, until delivered by the company, were not in any sense property, and were not liable to be seized upon attachment or execution. Under this authority it must be held that the sheriff took nothing under the attachment of the 2,974 bonds, and could carry no title to such bonds to the purchaser on the sale under the execution. In respect of them, therefore (assuming that this action can be maintained by the plaintiffs, and that the suit in the Circuit Court of the United States in the State of Michigan does not abate or bar this action), the legal conclusions of the court below in respect to the invalidity of these bonds are correct.

But a very different condition of things, both of fact and of law, applies to the 600 bonds. By the delivery of those bonds to the appellant as collateral to the moneys loaned or advanced by him, they had a complete inception, and became valid and effective instruments in which the pledgee had title and property sufficient to enable him to execute the pledge in accordance with its legal purport, under the agreement of the parties. The making and delivery of the notes for the indebtedness, although the notes cover a larger sum than that for which the pledge had been specifically made, did not impair the right of the pledgee. He could still enforce the pledge, certainly to the extent of the indebtedness which it was made to secure ; and if it be true that the attachment was not in fact levied upon the bonds as the evidence tends strongly to show, then his lien upon the bonds and his right of possession and disposition continued wholly unaffected by the existence of the suit and the issuing of the attachment.

It appears in the case that these 600 bonds were afterwards sold at the same time and place of sale, of the 2,974 bonds by one Smith, who was an auctioneer and deputy sheriff. On the part of the plaintiff it is claimed that these bonds were sold under the execution issued upon the judgment, and that therefore the lien of the pledge was displaced and the 600 bonds fell into the category of the 2,974 bonds, and became invalid for the reasons that affect the validity of the bonds last named.

On the other hand, it is claimed by the appellant that these bonds continued all the while under the pledge ; that he demanded payment of the sum for which they were pledged, and offered to return the bonds upon such payment being made ; that after the failure to pay he gave notice of the time and place of a sale under the pledge, which time and place were the same as those of the sale of the other bonds under the execution. He claims that he had, the day previous to the sale, made an arrangement with Smith to sell the 600 bonds by virtue of the pledge and independently of the execution; and he testified, in which he was corroborated by Mr. Davenport, that on the day of the sale he carried the bonds himself in a trunk from their place of deposit to the place of sale, and there opened the trunk and took out one of the bonds, delivering it to the auctioneer to be sold under the pledge ; that the sale of the 600 bonds was

then made by offering the one delivered, with the privilege of one or more, and that he became the purchaser of the whole of the bonds, and immediately took them into his possession as such purchaser. The evidence certainly tends strongly to show that this is a correct statement of the facts, and would clearly have justified the court in so finding. We think the finding, as made on this subject, was against the weight of evidence.

It was offered, on the part of the appellant, to prove the agreement made between the appellant and Smith prior to the sale in respect of the selling of the 600 bonds. This was excluded by the court, and the appellant was, in substance, confined to what actually transpired at the time of making the sale. The exclusion of this evidence, we think, was clearly erroneous. The agreement, if any was made, between the appellant and the autioneer and deputy sheriff Smith, as to selling the 600 bonds under the pledge, was a part of the *res gestœ*, which the appellant was entitled to prove. It would of course characterize the transaction of sale by the auctioneer, and greatly corroborate the appellant's testimony, that the same was under the pledge and not under the execution.

The several exceptions taken to the exclusion of this evidence were well taken, and in our judgment, necessarily lead to a reversal of the judgment, for if proof of the arrangement previously made for the sale had been allowed to be given, it might well, upon consideration of the court below, have led to a different conclusion.

The testimony tending to show that the sale was made under the execution rested almost wholly in certain documents found in the office of the ex-sheriff, which were by no means conclusive upon this important question. Neither the sheriff nor any of his officers were called as witnesses, and the deputy sheriff by whom the sale was made being dead, it became important that all legitimate evidence bearing upon the transaction should have been received by the court. For its exclusion of this evidence, there must, as we have alread said, be a new trial.

But it may be very well to express, as a proper subject of consideration, our grave doubts whether if the sale of the 600 bonds were in fact made under the execution, the result of that sale would reduce the bonds to the condition of invalid instruments. Undoubtedly, under the authorities, the levy of them under

the attachment, and the sale under the execution with the consent of the appellant, would be a waiver of his lien under the pledge. The rights, if any, that he would acquire to them, would be under the purchase at the execution sale. The bonds having been delivered to him as collateral security for large loans made by him to the company, the act of delivery had made them valid instruments. They were attachable in his hands. For that reason neither the company nor anybody else could assert that they had ceased to be valid because they had been attached or levied upon execution. A party who holds property under a pledge to secure a debt of the pledgor does not destroy the pledge or affect his rights under it by prosecuting his debt to judgment. The pledge still remains the security for the judgment debt, or so much of it as it was originally made to secure. Nor does the pledge cease to be *property* by reason of the levy of an execution upon it under the judgment. It still retains its character of property, although in the form of bonds, which it received upon the delivery for value to the pledgee. The bonds in question being valid in the hands of the appellant, and having had a legal inception for value, he was capable of conveying a good title to them to any subsequent *bona fide* purchaser for value, even though his act might, as between himself and the railroad company, amount to a conversion.

It seems to us a *non sequitur* both in law and logic, to hold that a party who holds such valid instruments pledged as collateral, and who has rightfully put the indebtedness for which they are pledged into the form of a judgment, must, if he chooses to waive his lien and levy the property on execution, thereby cease to have any rights in it whatever; and still more so, to hold that the act of such levy deprives the bonds of the character of *property*, and makes them instruments which have had no inception for the want of delivery. None of the authorities cited by the learned counsel for the respondents seem to us to go the length of producing such results.

We are of opinion that the sale, if made on execution, had the purchase been made by a third party, would have carried a valid title; but having been made by the pledgee himself, it at most still left open for the company or the receiver the question of an election to exercise a right of redemption upon payment of the original amount for which they were pledged. These questions will be

entirely open for consideration upon the new trial, and we think will justly lead to different conclusions in respect at least of the rights attaching to the 600 bonds.

The judgment must, however, be reversed upon the other grounds above assigned, and a new trial ordered, with costs to abide the event.

Bʀᴀᴅʏ and Bᴀʀʀᴇᴛᴛ, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide the event.